IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                Plaintiff,

                                                          ORDER
                                                      10-cr-13-wmc-1

     v.

BYRON BROOMFIELD,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      A hearing on the probation office's petition for judicial review of Byron Broomfield's supervised release was held on June 2, 2020, before U.S. District Judge William M. Conley. The following parties appeared by Zoom video conferencing: Assistant U.S. Attorney David Reinhard; the defendant; defense counsel Jeffrey Nichols; and U.S. Probation Officer Nicole Schultz.

FACTS

      From the record, I make the following findings of fact. Defendant was sentenced in the Western District of Wisconsin on July 14, 2010, following his guilty plea to distribution of five grams or more of crack cocaine in violation of 21 U.S.C. § 841, a Class B felony. With a Criminal History of VI and an offense level of 31, the defendant had a guideline range of 188 to 235 months, but Judge Adelman sentenced him to a 90-month term of imprisonment, after discounting for the crack powder disparities and career offense status under *U.S. v. Corner*, 598 F.2d 411 (7th Cir. 2010). This term of imprisonment was to be followed by a four-year term of supervised release. Defendant began his term of supervised release on July 27, 2018.

1

Defendant violated (1) Standard Condition No. 1, prohibiting him from leaving the judicial district without the permission of the court or probation officer; (2) Standard Condition No. 9, prohibiting defendant from knowingly associating with persons convicted of a felony, unless granted advance permission by the probation officer; and (3) Standard Condition No. 11, requiring defendant to notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

Specifically, on March 10, 2020, defendant was stopped by officers of the Drug Enforcement Agency (DEA) at O'Hare International Airport in Chicago, Illinois. Defendant was scheduled to travel one-way to Fresno, California, aboard United Airlines. Defendant was with his brother, Kenneth Pickens, who is himself a convicted felon. Needless to say, the defendant did not have permission to leave the Western District of Wisconsin, did not have permission to associate with Mr. Pickens, and failed to notify the probation officer within seventy-two hours of this law enforcement contact or advise that a substantial amount of cash was found on both Pickens and the defendant and confiscated by the DEA.

Upon further investigation, the Probation Officer discovered that this March 2020 trip was the last of some eleven other, unauthorized trips that the defendant had taken between March 2019 and January 2020:

- on January 18, 2020, defendant also traveled from Chicago O'Hare International Airport to Ontario International Airport, again without permission to leave the judicial district;

- on January 5, 2020, defendant traveled from Chicago O'Hare International Airport to Los Angeles International Airport, returning on January 7, 2020, from Los Angeles International Airport to Chicago O'Hare International Airport, both without permission to leave the judicial district;

- on December 6, 2019, defendant traveled from Chicago O'Hare International Airport to Miami International Airport without permission;

2

- on November 19, defendant traveled from Chicago O'Hare International Airport to Los Angeles International Airport without permission;

- on October 22, defendant traveled from Chicago O'Hare International Airport to Los Angeles International Airport without permission;

- on September 26, defendant traveled from Chicago O'Hare International Airport to Los Angeles International Airport, returning on September 28, 2019, from Los Angeles International Airport to Chicago O'Hare International Airport, both without permission;

- on September 6, defendant traveled from Los Angeles International Airport to Chicago O'Hare International Airport without permission;

- on July 21, defendant traveled from Ontario International Airport to Chicago O'Hare International Airport, with one layover at Dallas Fort Worth International Airport, without permission;

- on June 25, defendant traveled from Chicago O'Hare International Airport to San Francisco International Airport, returning on June 27, 2019, from San Francisco International Airport to Chicago O'Hare International Airport, both without permission;

- on May 22, defendant traveled from Chicago O'Hare International Airport to San Francisco International Airport without permission;

- on March 15, defendant traveled from Chicago O'Hare International Airport to Miami International Airport, returning on March 18, 2019, from Miami International Airport to Chicago O'Hare International Airport, also without permission;

From May 22, 2019, to January 18, 2020, defendant further traveled and associated with various other individuals having prior misdemeanor and/or felony convictions without the permission of the probation officer, including Markeeta Knight, Kenneth Pickens, Raymond Gosha, Kuluva Rucker, and Eric Shipp. The defendant maintains, and the court will assume, that he was unaware of the criminal history of the others traveling with him except his brother Pickens. He also maintains, somewhat incredibly, that all of his travels have been legitimate, although unauthorized, including the last, which he conceded involved his carrying some $19,000 in cash to California, supposedly to purchase "unique chemicals" for his car wash business and a car.

CONCLUSION

Although I think his behavior highly suspicious, given his having been clean himself and no direct evidence of his getting back into the drug business, I will not revoke the defendant's supervised release at this time, but will hold the hearing on the probation office's petition open for 90 days and impose the following additional condition on the defendant during that time as set forth in the order below.

ORDER

IT IS ORDERED that defendant's term of supervised release imposed on July 14, 2010, is CONTINUED and a ruling on the Probation Office's March 28, 2020, petition is STAYED for ninety days. In addition to all terms of his supervised release already imposed, the defendant SHALL also comply with the following GPS requirement:

> Participate for a period of 90 days in a location monitoring program with active GPS monitoring. Defendant shall abide by the technology requirements implemented at the direction of the supervising U.S. Probation Officer. Defendant shall not be responsible for the cost of location monitoring. During this period, defendant shall remain at defendant's residence (home detention) unless being given permission by the U.S. probation officer for employment and education purposes; religious services; medical, mental health, and substance abuse treatment; attorney visits; court appearances; and other approved activities. ALL ACTIVITIES LISTED ABOVE are to be PRE-APPROVED by the supervising U.S. Probation Officer.

Entered this 2nd day of June 2020.

BY THE COURT:

_____
WILLIAM M. CONLEY
District Judge